IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ronnie Bowman, | ) | C/A No. 3:05-677-CMC |
| | ) | CR. No. 3:01-349 |
| Petitioner, | ) | |
| | ) | |
| -versus- | ) | **OPINION and ORDER** |
| | ) | |
| United States of America. | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Ronnie Bowman has filed a motion for reconsideration of this court's grant of summary judgment to Respondent. This motion is filed pursuant to Fed. R. Civ. P. 59(e). Petitioner's Rule 59 motion was given to prison officials on September 21, 2005, within the ten-day time period required by the rule; therefore, it is properly considered under Rule 59.

Petitioner's motion asserts this court abused its discretion in a number of ways in granting summary judgment to Respondent and suggests numerous errors the court made regarding Petitioner's particular claims for relief.[1]

First, Petitioner argues this court applied the wrong test for ineffective assistance of counsel by applying the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), instead of the "more specific" rule found in *Hill v. Lockhart*, 474 U.S. 52 (1985).

Petitioner is correct that the court did not engage in a written analysis under the *Lockhart* standard. However, the court's conclusion is the same whether the analysis is under *Strickland* or *Lockhart*. "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a

---

[1] Petitioner argues all of his claims arise under an ineffective assistance of counsel rubric, yet this is belied by the presentation of his claims in the Petition filed March 3, 2005.

trial." *Lockhart*, *supra*, 474 U.S. at 59. Under *Lockhart*, a determination of what Petitioner would have done but for counsel's alleged errors involves an objective determination under the circumstances, including an evaluation of the strength of Respondent's case. *See Lockhart*, *supra*, 474 U.S. at 59-60 (citing *Evans v. Meyers*, 742 F.2d 371, 375 (7th Cir. 1984)); *Ostrander v. Green,* 46 F.3d 347, 356 (4th Cir.1995), *overruled on other grounds, O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir.1996); *United States v. Horne*, 987 F.2d 833, 836 (D.C. Cir. 1993). Without an objective analysis, Petitioner could establish prejudice simply by asserting he would have chosen to go to trial. Petitioner "must make more than a bare allegation that he 'would have pleaded differently and gone to trial.'" *Id*. at 836 (quoting *Key v. United States*, 806 F.2d 133, 139 (7th Cir.1986)). Accordingly, Petitioner must at least demonstrate that his contention regarding proceeding to trial has "a plausible foundation in the record." *United States v. Nahodil*, 36 F.3d 323, 327 (3d Cir. 1994).

Petitioner began his trial before a jury. After a day of testimony, Petitioner decided to enter a plea of guilty to two counts of the superseding indictment. This decision was made upon advice of counsel, and after extensive negotiations of a deal which would limit Petitioner's incarceration to twenty-two years.[2] Petitioner was heavily involved in these negotiations.

In considering a plea, Petitioner would have taken into consideration the strength of Respondent's case against him, much like the objective analysis the court conducts under *Lockhart*. As to the death claim, two witnesses had already testified regarding Petitioner's direct involvement in the death of the victim. Tapes of "911" telephone calls made by Petitioner after the victim's

---

[2]While the plea agreement indicated Respondent would recommend the imposition of a twenty-two year period of incarceration, Respondent argued at sentencing, and Judge Shedd agreed, that Petition had not complied with the terms of the plea agreement and therefore the imposition of the statutory maximum term of life imprisonment was warranted.

collapse also had been introduced into evidence by Respondent. Petitioner wept in front of the jury when those tapes were played. Respondent was also prepared to present expert witness testimony that a negative toxicology report was not unusual. Regarding the drug conspiracy charge, the Fourth Circuit noted Respondent had presented testimony of four witnesses who had testified "in laborious detail about hundreds of transactions over a period of four years, involving the sale of thousands of bags of heroin." *United States v. Bowman*, 348 F.3d 408, 415 (4th Cir. 2003), *cert. denied*, 540 U.S. 1226 (2004).

In addition to considering the strength of Respondent's case, the court should analyze any plausible contention made by Petitioner that he would have continued with the trial. *See Nahodil*, *supra*, 36 F.3d at 327. In this regard, the court might review any hesitation Petitioner expressed to the court about pleading guilty, or any contentions made by Petitioner during the Rule 11 colloquy which might indicate any material disagreement with Respondent's evidence against him. In this case, once Petitioner decided to plead guilty, he did not waver. He admitted his guilt to the court, recited his participation in the offense, and even voluntarily apologized to Nunn's family. Petitioner relies on his later contention that he allegedly lied at the plea hearing as a sufficient showing of his willingness to continue with the trial. However, as noted by the Fourth Circuit, "[t]o view the Rule 11 plea colloquy as a procedural game in which pieces are moved and manipulated to achieve a result that can beat the system," *Bowman*, *supra*, 348 F.3d at 417, undermines the elements of a Rule 11 proceeding designed to afford Petitioner due process. Therefore, because of evidence presented prior to Petitioner's decision to enter a guilty plea and because Petitioner has presented no plausible contention that he would have continued with his trial, the court concludes Petitioner has not made the necessary showing of prejudice under *Lockhart*.

Second, Petitioner contends in his Rule 59 motion that this court failed to consider the report of Dr. Daniel J. Spitz, M.D., which was attached to the Petition. Spitz's affidavit adds little to the findings of the court; it opines that because the toxicology reports were negative, "drugs did not cause or contribute to the death of Mark Nunn" and "there is no evidence to suggest that Mr. Nunn died secondary to a drug intoxication." Aff. Dr. Daniel J. Spitz, M.D., attachment to Petition filed Mar. 3, 2005. While asserting Nunn's death was the result of cardiac arrhythmia induced by severe coronary artery disease, Spitz's affidavit does not "proffer[] any reason why the government's proposed testimony explaining the [negative toxicology] report would be false or irrational." *Bowman*, *supra*, 348 F.3d at 414. Spitz reached his conclusion based on his "review of the autopsy and toxicology reports as well as multiple other documents pertaining to the death of [Nunn] . . . ," yet the affidavit does not say that it is *not* possible that Nunn died from a drug overdose, but rather that Spitz "*found no evidence* to indicate that Mr. Nunn died as a result of a drug overdose."[3] (Emphasis added.) As there was no evidence to find, Spitz's conclusion is unremarkable.

The remainder of Petitioner's other arguments are without merit. For the reasons stated in the court's September 12, 2005 order and as noted above, Petitioner's Rule 59(e) motion is **denied**.

IT IS SO ORDERED.

s/ Cameron McGowan Currie  
CAMERON McGOWAN CURRIE  
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
October 14, 2005  
C:\temp\notesB0AA3C\05-677 Bowman v. USA e denying r 59(e) motion.wpd

---

[3] The conclusion of Spitz's affidavit is that "whether the cause of Mr. Nunn's death is certified as arteriosclerotic heart disease or as undetermined, the fact remains; there is no evidence to suggest that Mr. Nunn died secondary to a drug intoxication." This conclusion is consistent with the evidence regarding the negative findings of the toxicology reports; Respondent has never contended the report was anything but negative.